EILEEN DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
MICHAEL ANTHONY BROWN
Assistant United States Attorney
California State Bar No. 243848
8000 United States Courthouse
411 West Fourth Street
Santa Ana, California 92701
Telephone: (714) 338-3505
Facsimile: (714) 338-3708
E-mail: Anthony.Brown@usdoj.gov
ALAN J. PHELPS
JAMES W. HARLOW
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth St., NW
Suite 6400-S
Washington, DC 20001
Telephone: (202) 616-4916
Facsimile: (202) 514-8742
E-mail: Alan.Phelps@usdoj.gov
James.w.Harlow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEREMY NELSON,<br>aka "Jeremy Jackson,"<br>ELIAS PONCE,<br>and<br>JOHN VARTANIAN,<br><br>Defendants. | No. CR 14-198-DSF<br><br><u>PLEA AGREEMENT FOR DEFENDANT ELIAS PONCE</u> |

1. This constitutes the plea agreement between ELIAS PONCE ("defendant") and the United States Attorney's Office for the



ef ep

Central District of California and the United States Department of Justice Consumer Protection Branch ("these Offices") in the above-captioned case. This agreement is limited to these Offices and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a) Give up the right to trial by jury on the counts charged in the indictment and, at the earliest opportunity requested by these Offices and provided by the Court, appear in the Central District of California and plead guilty to count one of the indictment, which charges defendant with conspiracy in violation of 18 U.S.C. § 1349.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and

prior to sentencing submits a completed financial statement on a form to be provided by these Offices.

3. Defendant further agrees to cooperate fully with these Offices, the United States Postal Inspection Service, and, as directed by these Offices, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a) Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b) Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by these Offices or compelled by subpoena or court order.

c) Produce voluntarily all documents, records, or other tangible evidence relating to matters about which these Offices, or their designee, inquire.

4. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

5. If requested to do so by these Offices, defendant will act in an undercover capacity to the best of defendant's ability in connection with criminal investigations by federal, state, local, or foreign law enforcement authorities, in accordance with the express instructions of those law enforcement authorities. Defendant agrees

not to act in an undercover capacity, tape record any conversations, or gather any evidence except after a request by these Offices and in accordance with express instructions of federal, state, local, or foreign law enforcement authorities.

THESE OFFICES' OBLIGATIONS

6. These Offices agree to:

a) Upon entry of defendant's guilty plea to count one of the indictment, move to dismiss counts four, five, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-two, and twenty-three of the indictment as charged against defendant.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing contained in this agreement.

d) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

7. These Offices further agree:

a) Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by these Offices, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by these Offices, any Cooperation Information. Defendant agrees, however, that these Offices may use both

Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b) Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c) In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d) If these Offices determine, in their exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline



AL MM

range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

8. Defendant understands the following:

a) Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b) Nothing in this agreement requires these Offices or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c) Defendant cannot withdraw defendant's guilty plea if these Offices do not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if these Offices make such a motion and the Court does not grant it or if the Court grants such a motion by these Offices but elects to sentence above the reduced range.

d) At this time these Offices make no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance. The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of these Offices.

e) These Offices' determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

NATURE OF THE OFFENSE

9. Defendant understands that for defendant to be guilty of the crime charged in count 1, that is, Conspiracy, in violation of Title 18, United States Code, Section 1349, the following must be true:

a) First, there was an agreement between two or more persons to commit the crimes alleged in the indictment, namely: mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

b) Second, defendant joined the conspiracy knowing its object and intending to help accomplish it; and

c) Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

10. The conspiracy to which defendant has agreed to plead guilty involves an agreement to commit the substantive offenses of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

PENALTIES AND RESTITUTION

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant

understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13. Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $2,350,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

14. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

15. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under

some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

16. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and these Offices agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below, but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

> *From in or around February 2010 through in or around September 2012, Jeremy Nelson together with others working for Nelson's two Orange County, California, companies -- Nelson Gamble and Associates ("Nelson Gamble"), and its successor, Jackson Hunter Morris and Knight ("Jackson Hunter") -- devised and knowingly participated in a scheme to defraud consumers by purporting to sell debt relief services. Sales representatives at the companies told consumers with unsecured debts -- primarily, credit card debts -- that consumers could make payments to the companies rather than to creditors, and that the companies would then use that money to negotiate*

*settlements of the consumers' debts for approximately fifty percent of the total debt amount.*

*Defendant began work at Nelson Gamble in or around November 2010. In calls with potential clients, defendant and defendant's co-conspirators held out Nelson Gamble as a law firm or as having attorneys working on its behalf. Defendant's co-conspirators also told customers, at times, that the company did not charge up-front fees. Consumers were told that aside from a small initial fee of approximately $200, payments made to their escrow accounts would be used for debt settlements. Defendant knew that these representations were not true. No attorneys worked on behalf of Nelson Gamble, and the business withdrew from client escrow accounts up-front fees of fifteen percent of the total unsecured debt. These misrepresentations and omissions were material and induced consumers to pay money into the Nelson Gamble debt relief program.*

*In or around October 2011, defendant's co-conspirators changed the name of the company from Nelson Gamble to Jackson Hunter. The business operations remained the same. Sales representatives continued to make the same misrepresentations in pitches to potential customers. In addition, defendant and defendant's co-conspirators told existing customers that Nelson Gamble had gone bankrupt and Jackson Hunter had taken over Nelson Gamble's client accounts. In handling customer complaints following the name change, defendant and defendant's co-conspirators blamed problems on the supposedly defunct Nelson Gamble and denied requests for refunds of monies paid to Nelson Gamble. Defendant and defendant's co-conspirators did*

not tell customers that Nelson Gamble and Jackson Hunter were essentially the same company with the same owner, under the same management, with many of the same personnel, and occupying the same office space. All of these misrepresentations were material and induced consumers to make payments to Jackson Hunter or refrain from pursuing refund requests.

By no later than February 2011, defendant was aware of the scope of the conspiracy and actively participated in it. He continued to actively participate in the conspiracy until in or around September 2012, when Jackson Hunter ceased operations based on law enforcement activity. Among other duties at the company, defendant handled "escalated" customer relations calls by making misrepresentations designed to convince customers to continue paying money. In furtherance of the conspiracy and in concert and agreement with his co-conspirators, defendant told customers, at various times, that Nelson Gamble had a legal team to help clients; that Nelson Gamble had gone bankrupt and Jackson Hunter was an unrelated business that had taken over a portion of the customer files; and that Jackson Hunter was a law firm that had been in the finance industry for 75 years with a track record of success. Defendant knew these representations were false at the time he made them. These misrepresentations were material in that they were intended to and had a natural tendency to induce customers to pay money to Nelson Gamble, lull customers into believing that Jackson Hunter was a separate and more reputable company than Nelson Gamble, and convince customers to continue paying Jackson Hunter to settle their debts.

*As to count one of the indictment and in furtherance of the conspiracy, on or about October 21, 2011, defendant spoke by telephone with victim F.Z. In that call, defendant falsely told F.Z., a Nelson Gamble customer, that Jackson Hunter was a law firm with 75 years of experience, that he was not the person F.Z. remembered from Nelson Gamble, and that his name was actually Elias Vargas.*

*Defendant's actions in furtherance of the conspiracy contributed to more than $1,500,000 in losses to more than 10 victims.*

SENTENCING FACTORS

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime[s] of conviction.

18. Defendant and these Offices agree to the following applicable Sentencing Guidelines factors:

a) The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which provides for a base offense level of 7;

b) The relevant amount of actual, probable or intended loss under U.S.S.G. § 2B1.1(b)(1)(I) resulting from the offense committed is more than $1,500,000 but less than $3,500,000, resulting in an offense level increase of 16;

c) There were more than 10 victims of defendant's offense, resulting in an increase of 2 offense levels under U.S.S.G. § 2B1.1 (b)(2)(A); and

d) Neither the aggravating role enhancement under U.S.S.G. § 3B1.1 nor the mitigating role reduction under U.S.S.G. § 3B1.2 apply.

Defendant and these Offices reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and these Offices reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to be represented by counsel - and if necessary have the court appoint counsel - at trial. Defendant understands, however, that defendant retains the right to be

represented by counsel - and if necessary have the court appoint counsel - at every other stage of the proceeding.

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

22. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23. Defendant agrees that defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the order of restitution entered by the court; (d) the fine imposed by the court,

provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and a condition barring defendant from engaging in, or assisting in, the operation of any business that involves sales of products or services by telephone.

24. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing guidelines, sentencing statutes, or statutes of conviction.

25. These Offices agree that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 46 months, these Offices give up its right to appeal any portion of the sentence, with the exception that these Offices reserve the right to appeal the amount of restitution ordered if that amount is less than $2,350,000.

RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

involuntary, then (a) these Offices will be relieved of all of their obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should these Offices choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, an Assistant United States Attorney, and an attorney for the Department of Justice, Consumer Protection Branch.

BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required



GL

certifications by defendant, defendant's counsel, an Assistant United States Attorney, and an attorney for the Department of Justice, Consumer Protection Branch, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), these Offices may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for these Offices to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of these Offices in writing. If these Offices declare this agreement breached, and the Court finds such a breach to have occurred, then:

a) If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b) These Offices will be relieved of all obligations under this agreement; in particular, these Offices: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c) These Offices will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d) In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

29. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of these Offices' sentencing recommendations or the parties' agreements to facts or sentencing factors.

30. Defendant understands that both defendant and these Offices are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of

sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case. While this paragraph permits both these Offices and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and these Offices' obligations not to contest the facts agreed to in this agreement.

31. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one - not the prosecutor, defendant's attorney, or the Court - can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between these Offices and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

EILEEN DECKER
United States Attorney

MICHAEL ANTHONY BROWN — Date: 9/24/15
Assistant United States Attorney

ALAN PHELPS — Date: 9/28/2015
JAMES W. HARLOW
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch

ELIAS PONCE — Date: 9/11/15
Defendant

THOMAS WOLFSEN — Date: 9/1/15
Attorney for Defendant
ELIAS PONCE

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

ELIAS PONCE
Defendant

9/11/15
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ELIAS PONCE's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be

asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

THOMAS WOLFSEN
Attorney for Defendant
ELIAS PONCE

9/4/15
Date