EILEEN DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
MICHAEL ANTHONY BROWN
Assistant United States Attorney
California State Bar No. 243848
8000 United States Courthouse
411 West Fourth Street
Santa Ana, California 92701
Telephone: (714) 338-3505
Facsimile: (714) 338-3708
E-mail: Anthony.Brown@usdoj.gov
ALAN J. PHELPS
JAMES W. HARLOW
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth St., NW
Suite 6400-S
Washington, DC 20001
Telephone: (202) 307-6154
Facsimile: (202) 514-8742
E-mail: Alan.Phelps@usdoj.gov
James.w.Harlow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN VARTANIAN,<br><br>Defendant. | No. SA 14-CR-198-DSF<br><br><u>PLEA AGREEMENT FOR DEFENDANT JOHN VARTANIAN</u> |

1. This constitutes the plea agreement between JOHN VARTANIAN ("defendant") and the United States Attorney's Office for the Central District of California and the United States Department of Justice Consumer Protection Branch ("these Offices") in the above-captioned case. This agreement is limited to these Offices and

cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a) Give up the right to trial by jury on the counts charged in the indictment and, at the earliest opportunity requested by these Offices and provided by the Court, appear in the Central District of California and plead guilty to count one of the indictment, which charges defendant with conspiracy in violation of 18 U.S.C. § 1349.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by these Offices.

THESE OFFICES' OBLIGATIONS

3. These Offices agree to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing contained in this agreement.

c) At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e) Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range.

NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in count 1, that is, Conspiracy, in violation of Title 18, United States Code, Section 1349, the following must be true:

a) There was an agreement between two or more persons to commit the crimes alleged in the indictment, namely: mail fraud, in

violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

b) Defendant joined the conspiracy knowing its object and intending to help accomplish it; and

c) One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5. The conspiracy to which defendant has agreed to plead guilty involved an agreement to commit the substantive offenses of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). The elements of the substantive offenses of mail fraud and wire fraud are as follows:

a) Participation in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

b) By a person who acted with the intent to defraud; that is, the intent to deceive or cheat;

c) Who used, or caused to be used, the mails (for mail fraud) or a wire communication (for wire fraud) to carry out or attempt to carry out an essential part of the scheme; and

d) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money.

PENALTIES AND RESTITUTION

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or

gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the these Offices' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

8. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and these Offices agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below,

but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

*From in or around February 2010 through in or around September 2012, Jeremy Nelson together with others working for Nelson's two Orange County, California, companies -- Nelson Gamble and Associates ("Nelson Gamble"), and its successor, Jackson Hunter Morris and Knight ("Jackson Hunter") -- devised and knowingly participated in a scheme to defraud consumers by purporting to sell debt relief services. Sales representatives at the companies told consumers with unsecured debts -- primarily, credit card debts -- that consumers could make payments to the companies rather than to creditors, and that the companies would then use that money to negotiate settlements of the consumers' debts for approximately fifty percent of the total debt amount.*

*In calls with clients, defendant's co-conspirators at times falsely said that Nelson Gamble had attorneys who would work on behalf of clients, that the company did not charge up-front fees, and that aside from a small initial fee of approximately $200, payments made to client escrow accounts would be used for debt settlements. In fact, no attorneys worked on behalf of Nelson Gamble, and the business withdrew from client escrow accounts up-front fees equal to fifteen percent of the total unsecured debt.*

*Defendant began work at Nelson Gamble in or around August 2010 as a sales representative. In sales calls, defendant did not disclose to potential customers that the program involved*

*significant up-front fees. As defendant knew, Nelson Gamble and Jackson Hunter charged customers significant up-front fees. After speaking with clients who agreed to enter the program, defendant sent "client plan" emails to Nelson and others that included detailed information regarding how much each customer would pay in up-front fees. As shown in those emails, the first six months of payments were taken as fees, along with significant portions of subsequent payments. This omission was material and induced consumers to pay money into the debt relief program.*

*Defendant at times falsely told potential customers that Nelson Gamble and Jackson Hunter were backed by a law group or involved an attorney trustee. Defendant told potential customers that the money they paid would be refunded if the customers were not satisfied. Defendant also referred customers to the Nelson Gamble and Jackson Hunter web sites, which included additional misrepresentations. For example, the Nelson Gamble website falsely stated the company charged "no up-front fees" and had a "team of legal professionals" to assist clients. The Jackson Hunter website falsely stated that the company managed $1 billion of debt. Defendant was aware of a high probability that these representations were untrue and deliberately avoided learning the truth. These misrepresentations were material and induced consumers to pay money into the debt relief program.*

*In or around October 2011, defendant's co-conspirators changed the name of the company from Nelson Gamble to Jackson Hunter because of customer complaints about Nelson Gamble. The*

*business operations remained the same. Defendant continued to make the same pitch containing the misrepresentations and omissions to potential customers. For example, in or around June 2012, defendant spoke by telephone from Orange County with potential customer T.A. in New York. In that call, defendant told T.A. that Jackson Hunter was backed by a law group, that refunds would be available, that Jackson Hunter's attorney trustee had $4 billion in debt settlement in nine years, and that the company had 89,000 clients.*

*In addition, defendant's co-conspirators told existing customers that Nelson Gamble had gone bankrupt and Jackson Hunter had taken over Nelson Gamble's client accounts. Defendant's co-conspirators blamed problems on the supposedly defunct Nelson Gamble and denied requests for refunds of monies paid to Nelson Gamble. Defendant and his co-conspirators did not tell customers that Nelson Gamble and Jackson Hunter were essentially the same company with the same owner, under the same management, with many of the same personnel, and occupying the same office space. Defendant knew that Jackson Hunter was essentially the same company as Nelson Gamble.*

*Defendant continued to actively participate in the conspiracy until in or around September 2012, when Jackson Hunter ceased operations based on law enforcement activity. Defendant's actions in furtherance of the conspiracy contributed to losses to more than 10 victims.*

<u>SENTENCING FACTORS</u>

12. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable

Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13. Defendant and these Offices agree to the following applicable Sentencing Guidelines factors:

a) The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which provides for a base offense level of 7;

b) The relevant amount of actual, probable or intended loss under U.S.S.G. § 2B1.1(b)(1) resulting from the offense committed was less than $1,500,000; however, the parties do not agree on the specific amount of actual, probable or intended loss, and Defendant reserves the right to contest the loss amount at sentencing;

c) There were more than 10 victims of defendant's offense, resulting in an increase of 2 offense levels under U.S.S.G. § 2B1.1 (b)(2)(A); and

d) The defendant was a minor participant in the criminal activity, resulting in a decrease of 2 offense levels under U.S.S.G. § 3B1.2(b).

Subject to paragraph 25 below, defendant and these Offices agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or these Offices were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of these Offices, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, these Offices would be free to seek the enhancement set forth in that section.

14. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15. Defendant and these Offices reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

16. Defendant understands that by pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to be represented by counsel – and if necessary have the court appoint counsel - at trial. Defendant understands, however, that defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

17. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18. Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 18 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it

is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; and the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

19. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing guidelines, sentencing statutes, or statutes of conviction.

20. These Offices agree that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 27 months, these Offices give up its right to appeal any portion of the sentence, with the exception that these Offices reserve the right to appeal the amount of restitution ordered if that amount is less than $1,200,000.

RESULT OF WITHDRAWAL OF GUILTY PLEA

21. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) these Offices will be relieved of all of their obligations under this agreement; and (b) should these Offices

choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

22. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, an Assistant United States Attorney, and an attorney for the Department of Justice, Consumer Protection Branch.

BREACH OF AGREEMENT

23. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, an Assistant United States Attorney, and an attorney for the Department of Justice, Consumer Protection Branch, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), these Offices may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for these Offices to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of these Offices in writing. If these Offices declare this agreement breached, and the Court finds such a breach to have occurred, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

24. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of these Offices' sentencing recommendations or the parties' agreements to facts or sentencing factors.

25. Defendant understands that both defendant and these Offices are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the

Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case. While this paragraph permits both these Offices and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and these Offices' obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one - not the prosecutor, defendant's attorney, or the Court - can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

27. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between these Offices and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

EILEEN DECKER
United States Attorney

[signature] 6/29/16

MICHAEL ANTHONY BROWN
Assistant United States Attorney
Date

[signature] 6/30/16

ALAN J. PHELPS
JAMES W. HARLOW
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
Date

[signature] 6-29-16

JOHN VARTANIAN
Defendant
Date

[signature] 6-29-16

JESSE GESSIN
Attorney for Defendant
JOHN VARTANIAN
Date

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I

understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

John Vartanian
JOHN VARTANIAN
Defendant

6-29-16
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JOHN VARTANIAN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or

representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

| | |
|---|---|
| JESSE GESSIN<br>Attorney for Defendant<br>JOHN VARTANIAN | 6/29/16<br>Date |